# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DONALD BROWN, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| C2C INNOVATIVE SOLUTIONS, INC., BENEFIT RECOVERY GROUP, LLC, WELLPOINT, INC., U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES, NATIONAL GOVERNMENT SERVICES, INC., NON-GROUP AND HEALTH PLANS, JOHN DOES 1 THROUGH 5, and JANE DOES 6 THROUGH 10, | ) | No. 1:25-cv-10028-JEK |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

**KOBICK, J.**

Plaintiff Donald Brown, proceeding *pro se*, brought this action alleging, among other claims, that the defendants engaged in harassing debt collection practices over medical bills that he did not owe and improperly referenced his settlement agreements in other cases. The complaint asserts seventeen claims against all defendants: C2C Innovative Solutions, Inc., Benefit Recovery Group, LLC ("BRG"),[1] Wellpoint, Inc. ("Elevance"),[2] the Centers for Medicare & Medicaid Services ("CMS"), National Government Services, Inc. ("NGS"), Non-Group and Health Plans

---

[1] The complaint identifies this defendant as Benefit Group and Recovery Center, Inc., but its true name is Benefit Recovery Group, LLC d/b/a Intellivo. ECF 24-1, at 6, ¶ 7; ECF 14, at 1. Because this defendant refers to itself as "BRG," the Court does the same.

[2] This defendant represents that Wellpoint, Inc. is the predecessor entity of Elevance Health, Inc. *See* ECF 18, at 1 n.1; ECF 20, ¶ 5; ECF 22. The Court follows the defendant's lead and uses the term "Elevance" throughout this decision.

("NGHP"), and ten unnamed individuals associated with those defendants. Pending before the Court are three motions to dismiss filed by CMS and NGS, Elevance, and BRG. For the reasons that follow, those motions will be granted. The claims against CMS will be dismissed for lack of subject matter jurisdiction or for failure to state a claim. Brown also fails to plausibly allege any claims against NGS. And the Court lacks personal jurisdiction over Elevance and BRG.

## BACKGROUND

The Court recounts the facts based on the allegations in the complaint, which is construed liberally because Brown is *pro se*, and the exhibits attached thereto. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 642 (1st Cir. 2019); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It also supplements those facts with the jurisdictional evidence submitted in connection with Elevance's motion to dismiss. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Brown received a bill for medical services furnished in 2021 that CMS had paid. ECF 24-1, at 5-78 ("Complaint"), ¶ 14; *see id.*, Ex. B, at 35-36 (CMS decision revealing "No Balance Due" for services rendered in October 2021). He responded by sending letters to NGHP in May and July 2024 stating that CMS has paid his medical bills since 2010 and requesting no further bills. *Id.* ¶ 15; *id.*, Ex. A, at 33-34. NGHP apparently informed Brown incorrectly that he had "settled a case for an injury to [his] shoulder." *Id.* ¶ 16. Brown explained, however, that "he never sued any other party for any injuries to any part of [his] body" and denied that another party was "responsible for the payment of said injury." *Id.* ¶¶ 15, 17. Yet "the defendants" allegedly continued to engage in "harassing" debt collection practices over "money [he] does not owe." *Id.* ¶ 23. Brown sent CMS and NGHP a Chapter 93A demand letter in October 2024 to stop this conduct and received a

response that did not resolve the dispute. *Id.* ¶¶ 19-21; *id.*, Ex. C, at 41-44. He also alleges that "the defendants" have improperly referenced his "settlements in other, non-related cases." *Id.* ¶ 22.

Brown filed this action in Dedham District Court on November 29, 2024. ECF 24-1, at 3. The complaint asserts the following seventeen claims against all defendants: violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Massachusetts Consumer Credit Reporting Act, M.G.L. c. 93, § 54A (Counts I and II, respectively); unfair debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and M.G.L. c. 93, § 49 (Counts III and IV, respectively); false or misleading representations in violation of 15 U.S.C. § 1125(a) and state law (Counts V and VII, respectively);[3] fraud and concealment (Count VI); invasion of privacy (Count VIII); intentional and negligent infliction of emotional distress (Counts IX and X, respectively); defamation (Count XI); libel (Count XII); slander (XIII); negligent hiring, training, and supervision (Counts XIV, XV, and XVI, respectively); and tortious interference with an advantageous relationship (Count XVII). Complaint ¶¶ 24-152. Brown seeks $50,000 in damages. *Id.* ¶ 2; ECF 1-1, at 2.

CMS and NGS removed the case to this Court under 28 U.S.C. § 1442(a)(1) on January 6, 2025. ECF 1, at 2. Three weeks later, they moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF 16. Elevance and BRG filed separate motions to dismiss for lack of personal jurisdiction and for failure to state a claim the same day. ECF 14, 18. In a supporting declaration, Elevance's Senior Vice President and Counsel, Pamela Williams, Esq., avers that "Elevance is a holding company incorporated in the State of Indiana" with a "principal place of business in Indianapolis" that has not done any business in Massachusetts, including, as

---

[3] The complaint purports to assert a claim under "Massachusetts G.L. Sec 13A" without identifying the relevant chapter. Complaint, at 10.

relevant here, between 2021 and 2024. ECF 20, ¶¶ 3-4, 6. She also avers that Elevance's predecessor entity, Wellpoint, "has never operated in Massachusetts." *Id.* ¶ 5. Brown filed oppositions to the motions to dismiss of Elevance and CMS and NGS in February 2025 but did not oppose BRG's motion. ECF 25, 26. After holding a hearing, at which Brown did not appear, the Court took the motions under advisement. ECF 38.

## DISCUSSION

### I.    CMS and NGS's Motion to Dismiss.

CMS and NGS move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation marks omitted). When ruling on such a motion, the Court must credit the "'plaintiff's well-pled factual allegations and dra[w] all reasonable inferences in the plaintiff's favor.'" *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 13 (1st Cir. 2023) (quoting *Merloghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010)).

In assessing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

    A.    <u>Fair Credit Reporting Act and Massachusetts Consumer Credit Reporting Act.</u>

Counts I and II, respectively, assert that the defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the Massachusetts Consumer Credit Reporting Act ("MCCRA"), M.G.L. c. 93, § 54A. Brown alleges that a defendant reported "negative and unfounded alerts to potential creditors," including through "spoken comments to [those] creditors and credit reporting agencies," even though the defendant "knew or should have known" about the inaccuracy, in "gross violation of" FCRA. Complaint ¶¶ 25-26. While the complaint does not identify the relevant statutory provision, the Court construes it as asserting a claim under 15 U.S.C. § 1681s-2(b).[4] That section of FCRA "imposes certain obligations on entities that furnish credit information to consumer credit reporting agencies," including the obligation "to investigate any disputes over the completeness or accuracy of the information furnished." *Chiang v. MBNA*, 620 F.3d 30, 30 (1st Cir. 2010) (citing 15 U.S.C. § 1681s-2(b)(1)).

To state a claim under Section 1681s-2(b)(1), the complaint must allege that the consumer credit reporting agency, not Brown himself, previously notified CMS or NGS about a potential inaccuracy. *See id.* But Brown merely alleges that *he* "raised his concerns" to the defendants. Complaint ¶ 26. The First Circuit has repeatedly explained that "'[a] notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under § 1681s-2(b).'" *Chiang*, 620 F.3d at 30 (quoting *Chiang*, 595 F.3d at 35 n.8); *accord Barrepski v.*

---

[4] Section 1681s-2(a) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). But Brown cannot rely on this section because, unlike Section 1681s-2(b), it does not provide a private right of action. *See Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 (1st Cir. 2010).

*Cap. One Bank*, 439 F. App'x 11, 12 (1st Cir. 2011). Because the complaint fails to allege that CMS or NGS, as furnishers of information, were ever contacted by a consumer credit reporting agency about inaccurate information regarding Brown—rather than by Brown himself—Brown's FRCA claim against those defendants will be dismissed.

His similar claim under the MCCRA is also subject to dismissal. Section 54A(a) of the MCCRA requires "[e]very person who furnishes information to a consumer reporting agency [to] follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete," and it prohibits any person from "provid[ing] information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete." M.G.L. c. 93, § 54A(a). Section 54A(g), in turn, establishes a private right of action. *See id.* § 54A(g) ("A person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section[.]"). There is disagreement among the sessions of this Court whether claims under the MCCRA are preempted by FCRA.[5] *Compare, e.g.*, *Logan v. Bank of Am., N.A.*, No. 19-cv-11483-DJC, 2020 WL 1245124, at *5 (D. Mass. Mar. 16, 2020), *with Catanzaro v. Experian Info. Sols., Inc.*, 671 F. Supp. 2d 256, 261 (D. Mass. 2009). This Court need not address this issue, however, because irrespective of whether Brown's MCCRA claim is preempted by FCRA, he still fails to plausibly state a claim. Brown alleges that the defendants "fail[ed] to remove negative comments from [his] credit report" after he "had raised his concerns" that, absent removal, he would suffer "great harm." Complaint ¶¶ 30-31. These allegations do not suffice to state a claim because Brown

---

[5] FCRA's preemption provision states that "[n]o requirement or prohibition may be imposed under the laws of any State" concerning, as relevant here, "the responsibilities of persons who furnish information to consumer reporting agencies," but it expressly exempts "section 54A(a) of chapter 93 of the Massachusetts Annotated Laws" from preemption. 15 U.S.C. § 1681t(b)(1)(F)(i).

fails to allege that the negative information was "not accurate or complete." M.G.L. c. 93, § 54A(a). Nor does he allege that the defendants "provide[d] [inaccurate] information to a consumer reporting agency." *Id.* Thus, the MCCRA claim against NGS and CMS will be dismissed. *See Brown v. JPMorgan Chase & Co.*, No. 22-cv-11298-FDS, 2023 WL 3511363, at *4 (D. Mass. May 17, 2023) (dismissing Brown's MCCRA claim in part because he did "not allege that [defendant] inaccurately reported [his] application for credit to the credit reporting agencies").

    B.    <u>Fair Debt Collection Practices Act and M.G.L. c. 93, § 49.</u>

Counts III and IV, respectively, assert that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and M.G.L. c. 93, § 49. Brown alleges that all defendants "harass[ed]" him by "continuously . . . dunn[ing] [him] regarding an alleged overdue balance" that he had properly paid, "in violation of the" FDCPA. Complaint ¶¶ 35-37.

"The FDCPA was enacted to protect debtors from abusive debt collection practices" by debt collectors. *Chiang*, 595 F.3d at 41 (citing 15 U.S.C. § 1692(e)). Those practices include "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute defines a "debt collector" as any individual in a business whose "principal purpose . . . is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due to another." *Id.* § 1692a(6). The term notably excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." *Id.* § 1692a(6)(C).

Since CMS, a federal agency, falls within this exception, Brown cannot sustain his FDCPA claim against CMS. The Court also lacks jurisdiction over this claim because CMS is, relatedly, entitled to sovereign immunity. *See Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir.

2007) ("[B]ecause the FDCPA does not contain an unequivocal and express waiver of sovereign immunity, the district court correctly held that it lacked subject matter jurisdiction in this case."); *accord Williams v. U.S. Dist. Ct. for the Dist. of Newark, New Jersey*, 455 F. App'x 142, 143 (3d Cir. 2011). Separately, Brown fails to plausibly allege that NGS qualifies as a "debt collector" within the meaning of Section 1692a(6). The complaint indicates that NGHP, not NGS, sent the allegedly harassing letters, and Brown sent only CMS and NGHP a Chapter 93A demand letter regarding the harassment. *See* Complaint ¶¶ 19-21; *id.*, Ex. A, at 33-34; *id.*, Ex. C, at 41-44. The FDCPA claim against NGS will accordingly be dismissed. *See Brown v. Transunion Holdings, Inc.*, No. 24-cv-11292-NMG, 2025 WL 491714, at *6 (D. Mass. Jan. 14, 2025), *report and recommendation adopted* (Feb. 13, 2025) (dismissing Brown's FDCPA claim where he had "not plausibly alleged that [defendant was] a 'debt collector' . . . under the FDCPA").

Brown's comparable state-law claim is similarly subject to dismissal. Section 49 prohibits a "creditor" from "collect[ing] or attempt[ing] to collect" debt "in an unfair, deceptive or unreasonable manner." M.G.L. c. 93, § 49. It further provides that "[f]ailure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." *Id.*; *see O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) (Section "49 itself provides no private right of action."). The complaint does not, however, adequately allege that NGS or CMS are "creditors." The controlling regulation defines "creditor" as, in part, "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor." 940 Code Mass. Regs. § 7.03. The complaint merely alleges that the defendants "use[d] the credit reporting system, in effect, to collect a debt(s) which is no longer owed." Complaint ¶ 44. That assertion is insufficient to plausibly allege that CMS or NGS are creditors. *See Brown*, 2025 WL 491714, at *7 (dismissing

Brown's Section 49 claim "either because the statute does not provide a private right of action or because plaintiff has not plausibly alleged that [defendant] is a 'creditor'").

C.    <u>Lanham Act.</u>

Count V asserts a claim under the Lanham Act, 15 U.S.C. § 1125(a), for "false or misleading representations." Complaint, at 12. To establish a claim under 15 U.S.C. § 1125(a) for unfair competition or false advertising, a plaintiff must allege that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002).

Brown alleges that the defendants' "systemic practices rise to the level of false or misleading representations under the plain definition of those words and are highly likely to have misled [him] regarding fictitious liability for medical services rendered." Complaint ¶ 49. Brown has not, however, pled any factual allegations that could support any element of this claim. Count V is accordingly dismissed.

D.    <u>Fraud and Concealment.</u>

Count VI alleges that the defendants engaged in "fraudulent concealment" by "concealing the details" about Brown's account and "not providing any legal documents showing that anyone other than the Defendant is responsible for the payment of medical services rendered." Complaint ¶¶ 54, 56, 59. "The elements of fraud consist of '[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" *Balles*

*v. Babcock Power Inc.*, 476 Mass. 565, 573 (2017) (quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982)).[6] Brown fails, however, to allege that he relied on any statement made by CMS or NGS. This omission is fatal to his fraud claim against CMS and NGS. Count VI will therefore be dismissed.[7]

    E.    <u>Section 13A.</u>

Count VII asserts that CMS and NGS made "false or misleading representations" in violation of "Massachusetts G.L. Sec 13A," without specifying the chapter. Complaint ¶ 69; *id.* at 10. The Court cannot discern what statute Brown seeks to invoke; "section 13A" does not on its face appear to refer to any provision of the Massachusetts General Laws addressing false or misleading representations. Count VII is therefore dismissed against CMS and NGS for failure to state a claim.

    F.    <u>State Law Tort Claims.</u>

The remaining ten counts assert tort claims of invasion of privacy; intentional and negligent infliction of emotional distress; defamation; libel; slander; negligent hiring, training, and supervision; and tortious interference with an advantageous relationship. These claims will be

---

[6] CMS and NGS also argue that fraudulent concealment is not a cause of action but a doctrine used to toll the statute of limitations. ECF 17, at 8. But given that a *pro se* complaint like this one "is 'to be liberally construed'" and "'must be held to less stringent standards than formal pleadings drafted by lawyers,'" the Court construes Count VI as a common-law fraud claim. *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[7] CMS is also entitled to sovereign immunity on Brown's fraud claim. "[J]urisdictional in nature," *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994), "'sovereign immunity shields the Federal Government and its agencies from suit'" absent an express waiver, *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *id.*). The Federal Tort Claims Act waives sovereign immunity for certain tort claims, but not those "arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h). This provision "comprehends claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961). Because Brown's fraud claim falls within this exception, the Court lacks jurisdiction over the claim against CMS. *See Jean v. Brennan*, No. 14-cv-11969-ADB, 2015 WL 4750858, at *2 (D. Mass. Aug. 11, 2015) (dismissing fraud claim against federal agency for lack of jurisdiction under that Act).

dismissed against CMS for lack of subject matter jurisdiction and against NGS for failure to state a claim.

The Court lacks subject matter jurisdiction over Counts VIII through XVII against CMS because Brown fails to allege that he exhausted his administrative remedies. The Federal Tort Claims Act ("FTCA"), which governs these counts, waives the sovereign immunity of the United States and its agencies for certain torts committed by federal employees, including negligence and other tortious acts or omissions. *See* 28 U.S.C. §§ 1346(b)(1), 2679(a); *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475-76 (1994); *Armor Elevator Co. v. Phoenix Urb. Corp.*, 655 F.2d 19, 22 (1st Cir. 1981). The statute also "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). It thus "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Id.* at 113; *see Cormier v. U.S. Dep't of Labor*, 30 F.3d 126, at *3 (1st Cir. 1994) (per curiam) ("The [Supreme] Court specifically held that a litigant's *pro se* status does not excuse his failure timely to file an administrative claim."). Brown fails to allege that he presented or exhausted his administrative claim with CMS before filing this lawsuit. Counts VIII through XVII will, accordingly, be dismissed as to CMS for lack of subject matter jurisdiction. *See Barrett ex rel. Est. of Barrett v. United States*, 462 F.3d 28, 38 (1st Cir. 2006) (finding "lack [of] jurisdiction to review Plaintiff's FTCA claim against the government" because "Plaintiff failed to exhaust her remedies").[8]

---

[8] Brown's claims for defamation, libel, and slander against CMS also fail on the merits because the FTCA preserves sovereign immunity for "[a]ny claim arising out of . . . libel [or] slander." 28 U.S.C. § 2680(h); *see Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (the FTCA "explicitly exempts 'libel' and 'slander'—what amounts to 'defamation'—from the claims to which the United States grants consent to be sued" (citation omitted)).

Counts VIII through XVII against NGS will be dismissed for failure to state a claim. The Court liberally construes Count VIII as asserting a claim of invasion of privacy under M.G.L. c. 214, § 1B. *See Alberts v. Devine*, 395 Mass. 59, 70 (1985) ("a common law cause of action for invasion of privacy" has not been recognized). Section 1B provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." M.G.L. c. 214, § 1B. To sustain a claim under that statute, "'the invasion must be both unreasonable and substantial or serious.'" *Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793 (2015) (quoting *Nelson v. Salem State College*, 446 Mass. 525, 536 (2006)). Brown alleges that NGS has "regularly invaded [his] Privacy . . . by putting [him] in a false light . . . as a 'deadbeat.'" Complaint ¶ 74. But Massachusetts has not recognized a "false light invasion of privacy claim" under M.G.L. c. 214, § 1B. *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 n.16 (2005) (citing *ELM Med. Lab'y, Inc. v. RKO Gen., Inc.*, 403 Mass. 779, 787 (1989)). Brown also alleges that the defendants have "regularly invaded [his] Privacy" by "taking notice of [his] settlements" and "publishing private and false facts about [him] in his healthcare benefit accounts." Complaint ¶¶ 72-73. Without further elaboration, these conclusory allegations are insufficient to plausibly allege that NGS unreasonably, substantially, or seriously interfered with Brown's privacy. Count VIII will therefore be dismissed.

Counts IX and X allege intentional and negligent infliction of emotional distress, respectively. To sustain the former claim, Brown must plausibly allege that (1) NGS "'intended to inflict emotional distress or that [it] knew or should have known that emotional distress was the likely result of [its] conduct'"; (2) "'the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community'"; (3) NGS's actions caused Brown's distress; and (4) his emotional distress was "'severe.'" *Butcher v. Univ. of*

*Mass.*, 483 Mass. 742, 758 (2019) (quoting *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010)). Brown's allegations fall far short. The complaint merely alleges the first three elements in a conclusory fashion without any factual support. *See* Complaint ¶¶ 78-82. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Polay v. McMahon*, 468 Mass. 379, 385 (2014) ("'The standard for making a claim of intentional infliction of emotional distress is very high.'" (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996))).

Count X suffers from the same infirmity. To prevail on his negligent infliction of emotional distress claim, Brown must adequately allege "'(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.'" *Lanier v. President & Fellows of Harvard Coll.*, 490 Mass. 37, 44 (2022) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). The complaint again improperly relies on insufficient conclusory allegations. *See* Complaint ¶¶ 88-94. Brown alleges, for example, that NGS's "actions were clearly negligent," *id.* ¶ 94, but he does not support that conclusory allegation with any facts showing that it owed him a duty or that its "failure to exercise reasonable care resulted in a breach of that duty," *Lanier*, 490 Mass. at 44. Accordingly, Counts IX and X against NGS will be dismissed.

Counts XI, XII, and XIII assert claims for defamation, libel, and slander, respectively. "A defamation action, which encompasses libel and slander, affords a remedy for damage to the reputation of the injured party." *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 522 (2013). To state a claim for defamation, Brown must adequately plead that "(1) [NGS] published a false statement regarding the plaintiff—that is, [NGS] communicated the statement concerning the plaintiff to a

third party; (2) the statement could damage the plaintiff's reputation in the community; and (3) the statement caused economic loss or is otherwise actionable without proof of economic loss." *Flagg v. AliMed, Inc.*, 466 Mass. 23, 37 (2013). "The statement may be published in writing or some other equivalent medium (in which case it is designated as libel), or . . . orally (in which case it is designated as slander)." *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629 (2003). Brown also "'must specifically identify the allegedly false statement.'" *3137, LLC v. Town of Harwich*, 126 F.4th 1, 15 (1st Cir. 2025) (quoting *Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 53 n.2 (2020)). At a minimum, Brown fails to specify NGS's allegedly false statements about him. The complaint repeatedly alleges that the defendants made written and oral "untrue" statements about him that "attacked [his] character" and "defamed" him. Complaint ¶¶ 102, 106, 112, 118. Because these conclusory allegations do not identify what those statements are, Counts XI, XII, and XIII against NGS will be dismissed. *See 3137, LLC*, 126 F.4th at 15 ("allegations that the defendant made statements that cast the plaintiff in a negative light, but that do not identify a specific statement, are not sufficient" (brackets and quotation marks omitted)).

Counts XIV, XV, and XVI assert claims of negligent hiring, training, and supervision, respectively. "[P]rivate employers hiring public-facing employees must exercise reasonable care in selecting those employees and, in retaining them, must continue 'exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs.'" *Theisz v. Massachusetts Bay Transp. Auth.*, 495 Mass. 507, 518 (2025) (quoting *Helfman v. Ne. Univ.*, 485 Mass. 308, 326 (2020)). "A private employer who fails to exercise reasonable care in hiring, training, supervising, and retaining such public-facing employees can be liable for its negligence in this regard." *Id.*; *see Doe v. Brandeis Univ.*, 718 F. Supp. 3d 83, 92 n.1 (D. Mass. 2024) ("Massachusetts case law does not meaningfully distinguish between the torts of negligent

supervision, retention, training, and hiring."). To sustain his three claims, Brown must allege that NGS became "'aware or should have become aware of problems with an employee that indicated his unfitness'" and that it "'fail[ed] to take further action such as investigating, discharge or reassignment.'" *Helfman*, 485 Mass. at 326 (quoting *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 291 (1988)). Yet the complaint does not identify the relevant NGS employee or any issues with that employee. Because Brown's unadorned legal conclusion that NGS negligently hired, trained, and supervised its employees is not supported by well-pled factual allegations, these claims will be dismissed. *See* Complaint ¶¶ 122-45; *Iqbal*, 556 U.S. at 679; *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 338 (1st Cir. 2022) (affirming dismissal of negligent supervision claim where plaintiff did "not allege with any specificity how [supervisor] would have become aware of [employee's] alleged incompetence").

Count XVII alleges that NGS tortiously interfered with an advantageous relationship. To succeed on this claim, Brown must allege "'that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) [NGS] knowingly induced a breaking of the relationship; (3) [NGS's] interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) [he] was harmed by [NGS's] actions.'" *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, 495 Mass. 207, 223 (2025) (quoting *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007)). The complaint alleges that "a contractual relationship between [Brown] and a third party ([his] creditors)" existed; NGS "harmed [him] by interfering with that contractual relationship by making false statements to the third party"; NGS's conduct was tortious because it lacked "privilege or justification"; and Brown sustained "[a]ctual damage . . . as a consequence of [NGS's] conduct." Complaint ¶¶ 147-50. Brown fails, however, to allege sufficient facts to support these conclusory allegations. He does

not, for example, allege that NGS "knowingly induced" a rupture between him and any third parties, or that NGS's interference was "improper in motive or means." *Blackstone*, 448 Mass. at 260. His claim for tortious interference will accordingly be dismissed.

## II.    Elevance's and BRG's Motions to Dismiss.

Elevance and BRG separately move to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[9] In considering a Rule 12(b)(2) motion to dismiss, the Court may use one of three methods to assess whether Brown has met his burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether Brown has "proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d at 34. It is not sufficient for him to "'rely on unsupported allegations in [his] pleadings.'" *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). He "must go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted).

"Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum [State] that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024)

---

[9] Because the Court lacks personal jurisdiction over Elevance and BRG, it does not reach their alternative arguments that the complaint fails to state a claim under Rule 12(b)(6).

(quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor*, 592 U.S. at 358 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

The Court lacks general jurisdiction over Elevance and BRG. General jurisdiction exists when the defendants' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). This allows a corporate defendant like Elevance or BRG to be sued "only in States where the corporation is incorporated or has its 'principal place of business.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023) (quoting *Ford Motor*, 592 U.S. at 359). The Senior Vice President and Counsel for Elevance, Pamela Williams, Esq., avers in her declaration that Elevance is incorporated and has its principal place of business in Indiana. ECF 20, ¶¶ 3-4; *see* Complaint ¶ 8. BRG is a Delaware limited liability company with a principal place of business in Tennessee. ECF 40, ¶ 4; *see* Complaint ¶ 7. Accordingly, neither Elevance nor BRG can be subject to general jurisdiction in Massachusetts. *See Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 58 (1st Cir. 2020) (finding no general jurisdiction where "Massachusetts [was] neither [defendant's] state of incorporation nor its principal place of business").

The Court also lacks specific jurisdiction over Elevance and BRG. Because BRG and Elevance both limit their jurisdictional objections to constitutional grounds, "the court need only consider those particular grounds." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022); *see* ECF 15, at 4 (arguing that the complaint does not contain any "allegation that would ascertain BRG's 'minimum contacts' in the Commonwealth of Massachusetts"); ECF 19,

at 7 ("[A]ny exercise of jurisdiction over Elevance would not comport with constitutional requirements."). The exercise of specific jurisdiction over these defendants satisfies due process if Brown can "show that (1) [his] claim directly arises out of or relates to [their] forum activities; (2) [their] forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering [their] involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

Brown fails to meet this burden for Elevance. The only evidence before the Court is Williams' declaration, which establishes that Elevance has no business in Massachusetts. Williams attests that Elevance is a holding company incorporated and principally based in Indiana that "does no business in Massachusetts," "has no staff or customers in Massachusetts," "is not involved with any settlements in Massachusetts," and "does not engage in credit reporting in Massachusetts." ECF 20, ¶¶ 3-4, 6, 12-13, 15. Nor has Elevance's predecessor entity, Wellpoint, ever operated in the Commonwealth. *Id.* ¶ 5.

True, Williams also avers that NGS is a wholly owned subsidiary of Elevance. *Id.* ¶ 8. But courts generally presume "the institutional independence of parent and subsidiary when determining whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). The "presumption of corporate separateness" can only "be overcome by clear evidence." *Platten*, 437 F.3d at 139 (quotation marks omitted). This bar is met when, for example, "the parent has utilized the subsidiary in such a way that an agency relationship between the two

corporations can be perceived," "the exercise of control by the parent [is] 'greater than that normally associated with common ownership and directorship,'" or "the subsidiary is merely an empty shell." *Donatelli*, 893 F.2d at 466 (citations omitted).

Brown does not proffer any evidence, let alone clear evidence, to support disregarding the corporate form between Elevance and its subsidiary, NGS. *See* ECF 20 ¶ 9 ("NGS is separately incorporated and independent from Elevance."). Instead, he asserts in his brief that Elevance is vicariously liable for other defendants' actions, "is responsible for parties which do business in Massachusetts," and "controls businesses who collect for Medicare." ECF 26, at 12-14. Such assertions, however, are not evidence. *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 224 (1st Cir. 2015) (An "allegation in their brief certainly is *not* evidence."). Nor would these conclusory allegations, including the invocation of vicarious liability in the complaint, be sufficient in any event. *See* Complaint ¶ 28; *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 66 (1st Cir. 2002). Absent any evidence to support disregarding the corporate form, any alleged actions by NGS in Massachusetts cannot be imputed to its parent, Elevance. Because "nothing in the record substantiates the proposition that [Elevance] 'plainly made a choice to avail itself of the forum's benefices,'" no specific jurisdiction exists over Elevance. *Platten*, 437 F.3d at 139 (quoting *Donatelli*, 893 F.2d at 466).

For similar reasons, the Court lacks specific jurisdiction over BRG. While BRG offers no evidence in support of its motion, the complaint itself fails to establish that BRG has the requisite minimum contacts with Massachusetts. As BRG points out, the complaint lacks a single factual allegation that ties the conduct of BRG to Massachusetts, and none of the exhibits attached to the complaint reference or relate to BRG. ECF 15, at 4. Brown, who has not opposed BRG's motion to dismiss, does allege in the complaint that BRG is "the parent company of" NGS. Complaint ¶ 7.

But, as explained, that allegation is insufficient to establish personal jurisdiction over BRG. *See Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925))); *accord Nat'l Lab. Rels. Bd. v. Maine Coast Reg'l Health Facilities*, 999 F.3d 1, 17 (1st Cir. 2021). Because the complaint fails to allege any affirmative conduct by BRG in, or targeted at, Massachusetts, specific jurisdiction does not exist over BRG. *See Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010) ("[T]here must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))).

## CONCLUSIONS AND ORDERS

For the foregoing reasons, the motions to dismiss filed by BRG, ECF 14; CMS and NGS, ECF 16; and Elevance, ECF 18, are GRANTED. Because the claims against Elevance and BRG are dismissed for lack of personal jurisdiction, such claims would typically be dismissed without prejudice. In view of Brown's vexatious pattern of litigation, however, Elevance seeks dismissal with prejudice. The Court concurs that dismissal with prejudice is warranted. Brown did not appear at the hearing on the motions to dismiss, indicating his lack of intent to prosecute this case. He has also filed numerous lawsuits in this and other courts that have been dismissed for lack of prosecution, for failure to comply with court orders, and for asserting frivolous allegations. *See, e.g.*, ECF 9, 10, *Brown v. Wells Fargo Bank, N.A.*, No. 25-cv-10379-RGS (D. Mass.) (dismissal with prejudice based on claim preclusion, with recommendation that Brown be barred from filing further lawsuits without prior approval of the Chief Judge); ECF 14, 15, *Brown v. JPMorgan*

*Chase & Co.*, No. 24-cv-11571-FDS (D. Mass.) (dismissal based on claim preclusion that notes Brown's pattern of filing "groundless or vexatious lawsuits"); ECF 20, 21, *Brown v. Apple, Inc.*, No. 24-cv-11510-WGY (D. Mass.) (dismissal with prejudice for failure to appear at hearing); ECF 18, 19, *Brown v. Equifax, Inc.*, No. 24-cv-11331-LTS (D. Mass.) (dismissal for failure to prosecute); ECF 23, 24, *Brown v. JPMorgan Chase & Co.*, No. 24-cv-11078-RGS (D. Mass.) (dismissal with prejudice for failure to comply with court order); ECF 10, 11, *Brown v. JPMorgan Chase & Co.*, No. 23-cv-13053-FDS (D. Mass.) (dismissal for failure to comply with court order); ECF 21, 22, *Brown v. JPMorgan Chase & Co.*, No. 22-cv-11298-FDS (D. Mass.) (dismissal for failure to state a claim); ECF 10, *Brown v. Capitol One*, No. 18-cv-10759-DJC (D. Mass.) (dismissal for failure to comply with court order). In view of this pattern of vexatious and frivolous litigation, Brown's claims against CMS, NGS, Elevance, and BRG are DISMISSED with prejudice.

  SO ORDERED.

            /s/ Julia E. Kobick
            JULIA E. KOBICK
Dated: August 13, 2025      UNITED STATES DISTRICT JUDGE